UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                :

UNITED STATES OF AMERICA         :

                                         :         Docket No.: 12-CR-171 (S-1) (JPO)

      -v-                        :

                                         :         **REPLY MEMORANDUM OF LAW**

MIKHAIL ZEMLYANSKY,          :         **IN FURTHER SUPPORT OF**

     et al.,                       :         **MICHAEL DANILOVICH'S**

                                         :         **PRETRIAL MOTION TO DISMISS**

            Defendants.             :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

      Michael Danilovich, by his attorneys, submits this reply memorandum of law in support of his pretrial motion to dismiss the mail fraud count and health care fraud counts of the Indictment to the extent they are based on the "fraudulent incorporation" theory.[1] Because the fraudulent incorporation theory does not implicate any cognizable "money or property" interests under the federal mail fraud and health care fraud statutes, the Court should preclude any defendant from being convicted of mail or health care fraud on the basis of the "fraudulent incorporation" theory.[2]

---

[1] As the government points out in its opposition papers, Mr. Danilovich inadvertently did not argue in his opening brief that the fraudulent incorporation theory also is a deficient basis for conviction under the federal health care fraud statute. To make it clear, we are requesting the same relief for both the mail fraud and health care fraud counts in the Indictment.

Additionally, based on the government's representations in its opposition papers, Mr. Danilovich agrees to defer argument on his motion to strike surplusage pending negotiations on appropriate redactions, if necessary.

[2] The government attempts to distance itself from its prior assertion that it will pursue at trial "two theories of the fraud . . .: (1) the fraudulent incorporation of the professional corporations under which the No-Fault and Modality Clinics billed the insurance companies . . . and (2) the systematic provision of medically unnecessary treatments at the No-Fault and Modality Clinics." Gov't Mem. in Opp. to Bill of Particulars (Dkt. No. 372) at 9. It now recasts its fraud allegations as a single

*(Footnote continued)*

As its opposition brief makes clear, the government does not dispute— and, in fact, concedes, as it must—the following irrefutable facts:  Under New York law, no-fault insurers *must* pay for covered medical services performed by licensed physicians or other health care professionals.  *See* N.Y. Ins. Law §§ 5102.  Furthermore, clinics that are not owned by licensed health care professionals are *ineligible* to receive payments for submitted claims.  *See* 11 N.Y.C.R.R. § 65-3.16(a)(12) ("A provider of health care services is not eligible for reimbursement . . . if the provider fails to meet any applicable New York State or local licensing requirement necessary to perform such service . . .").  In order to promote compliance with that regulation, the New York Insurance Department incentivizes insurers to enforce laws prohibiting the corporate practice of medicine.  Specifically, the law permits the insurers to withhold paying ineligible clinics if they can establish their ineligibility after good-faith investigation, even if the medical services performed were covered, necessary, and legitimately performed by licensed health care professionals.  *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Mallela*, 4 N.Y.3d 313, 321 n.3 (2005).

What the government refuses to acknowledge in its opposition brief—but cannot refute—is the simple fact that under the No-Fault scheme, if an insurer *knows* that a clinic is owned by laypersons, it not only has the right to withhold payment, but also the *obligation* to withhold payment.  That is because layperson-owned clinics are ineligible for reimbursement under the No-Fault regulatory scheme.  Thus, although it is conceivable that in the absence of the No-Fault scheme, an insurer might freely choose to reimburse an

---

"widespread scheme to defraud insurance companies of money based on multiple material misrepresentations."  Gov't Opp. at 42.  No matter how the government chooses to describe the theory of the fraud it will attempt to prove at trial, the government believes and will attempt to obtain convictions of defendants under the "fraudulent incorporation" theory.  It should not be permitted to do so.

layperson-owned clinic because that clinic has demonstrated it performs only legitimate and necessary medical services, under the No-Fault scheme, it *cannot* do so—no matter how "counterintuitive" that seems to the government. Gov't Opp. at 64.

That fact is significant because it demonstrates that the windfall conferred on insurers by permitting them to withhold otherwise mandatory payments is designed solely to advance and enforce the Superintendent of Insurance's regulatory goals: to deter and diminish the corporate practice of medicine in New York. By providing a substantial incentive to insurance carriers to investigate ownership of clinics, the insurers effectively are deputized as enforcement officers with respect to the No-Fault regulations. Their role in this context is unique, and raises novel questions as to whether an insurer's right *and* obligation to withhold payments constitutes an cognizable interest in "money or property" under the federal fraud statutes. Rather than address these issues, the government sidesteps Mr. Danilovich's arguments by dismissing them as "counterintuitive" and designed to "complicate" the fraud allegations. Gov't Opp. at 64, 65. In doing so, the government avoids having to explain why the insurers' obligation to withhold otherwise mandatory payments constitutes a cognizable interest in money or property under the federal fraud statutes despite the fact that: (a) the windfall is conferred on insurance companies ancillary to regulation (*see Cleveland v. United States*, 531 U.S. 12, 26-27 (2000); *United States v. Evans*, 844 F.2d 36, 41 (2d Cir. 1988)); and (b) it is not a traditional property right under the common law (*Evans*, 844 F.2d at 41) and lacks the hallmarks of exclusivity and transferability (*United States v. Henry*, 29 F.3d 112, 114 (3d Cir. 1994); *United States v. Alkaabi*, 223 F. Supp. 2d 583, 590 (D.N.J. 2002). *See also*, Danilovich Opening Br. at 7-9.

Instead, the government attempts to transform violations of State regulations into federal fraud offenses by arguing that a clinic's non-disclosure of layperson ownership deprives insurance companies of money they would not otherwise have to pay. That argument is too facile because the government ignores that the insurers also would be *prohibited* from paying claims to the same layperson-owned clinics. The mere fact that money changes hands is not dispositive as to whether a money interest is cognizable under the fraud statutes—the victim must have a discretionary right to control the money. *See United States v. Turner*, 465 F.3d 667, 680 (6th Cir. 2006) (the payment of an elected official's salary to an elected official who conducted an illegal campaign is not a money interest because "the relevant salary would be paid to someone [whoever won the election] regardless of the fraud"); *United States v. Ratcliff*, 488 F.3d 639 (5th Cir. 2010) ("[I]t cannot be said that the parish would be deprived of this money by means of Ratcliff's misrepresentations [about campaign finance regulations], as the financial benefits budgeted for the parish president go to the winning candidate regardless of who that person is").

Here, the insurers have no real discretion: they *must* pay claims by clinics for legitimate and necessary treatments by health care professionals; they *cannot* pay such claims, however, if they discover the clinics are owned by laypersons. Withholding payments is obligated by regulations, designed to promote regulatory goals, and provides an incidental windfall to insurers. Payment for legitimate and necessary services may deprive insurers of their windfall but that does not make them traditional "victims" under the federal fraud statutes. Based on the analysis in *Cleveland,* 531 U.S. at 20, and *Evans*, 844 F.2d at 41, the insurer's interest in the funds withheld is not a cognizable "money or

property" interest under the federal fraud statutes. The fraudulent incorporation theory accordingly fails. *See also*, Danilovich Opening Br. at 5-9.

The government attacks Danilovich's opening brief on the grounds that we cite no decisional authority on all fours with this case. Gov't Opp. at 65. Concededly, we do not because we cannot—no published or unpublished opinion we can find addresses these unique circumstances. For the same reasons, the government likewise cites no case on point to support its argument. That is far more troublesome, however, because the government endorses a position that for, all intents and purposes, enforces state fraudulent incorporation regulations through the federal fraud statutes. In the absence of a clear statement by Congress that the scope of the fraud statutes can be interpreted so expansively, the Court should err on the side of maintaining the federal-state balance. *See Cleveland*, 531 U.S. at 25 ("[U]nless Congress conveys its purpose clearly, it will not be deemed to have significantly changed the federal-state balance in the prosecution of crimes."). Furthermore, ambiguity "concerning the ambit of criminal statutes should be resolved in favor of lenity." *Id.*

## CONCLUSION

For all of the foregoing reasons and the reasons set forth in Mr. Danilovich's opening brief, the Court should grant his pretrial motion to preclude conviction of any defendant under the mail fraud or health care fraud statutes on the basis of the fraudulent incorporation theory.[3]

| | |
|---|---|
| April 10, 2013<br>New York, New York | /S/ Eric M. Creizman____<br>Eric M. Creizman (EC 7684)<br><br>CREIZMAN PLLC<br>565 Fifth Avenue, Fl. 7<br>New York, New York 10017<br>Tel.: (212) 972-0200<br>Fax: (646) 200-5022<br>Email: ecreiz@creizmanllc.com<br><br>*Attorneys for Michael Danilovich* |

---

[3] Mr. Danilovich also joins in Yuriy Zayonts' arguments set forth in his motion to dismiss the fraudulent incorporation theory and in Mikhail Zemlyansky's motion to suppress wiretap evidence.