UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
:
UNITED STATES OF AMERICA
:
    - v. -                                  S21 12 Cr. 171 (DAB)
:
MICHAEL DANILOVICH,
:
          *Defendant*.
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  X

**THE GOVERNMENT'S MOTION *IN LIMINE***

                                                                   PREET BHARARA
                                                                   United States Attorney for the
                                                                   Southern District of New York
                                                                   One St. Andrew's Plaza
                                                                   New York, New York 10007

Daniel S. Noble
Joshua A. Naftalis
Jaimie L. Nawaday
Assistant United States Attorneys
      - Of Counsel -

The Government respectfully submits this motion *in limine* to admit limited testimony concerning Michael Danilovich's 2001 conviction for securities fraud, pursuant to Federal Rule of Evidence 404(b).

## BACKGROUND

### A.     The S21 Indictment

This case arises from a criminal enterprise run by Michael Danilovich and Michael Zemlyansky from approximately 2007 through 2012 that conducted a pattern of racketeering with a number of predicate offenses. *First*, from approximately 2007 through 2009, Danilovich and Zemlyansky operated two investment fraud schemes or "boiler rooms," the Lyons, Ward & Associates ("Lyons Ward") scheme and the Rockford Group LLC ("Rockford Group") scheme. *Second*, from approximately 2009 through 2012, Danilovich and Zemlyansky operated a no-fault insurance health care fraud scheme, in which they fraudulently owned and operated numerous health care clinics, or "medical mills," in Brooklyn and the Bronx that recruited car accident victims, provided them with extensive and unnecessary treatments, and then overbilled insurance companies. *Third*, Danilovich and Zemlyansky engaged in money laundering in connection with both the investment fraud and the health care fraud schemes, including wiring money overseas and using check chasing businesses. *Fourth*, throughout the life of the criminal enterprise, Danilovich and Zemlyansky also operated illegal poker games and sports betting books in Brooklyn and Manhattan. *Finally*, in approximately 2011 and 2012 Danilovich returned to investment fraud, and took steps to establish the Baron & Caplan Associates ("Baron & Caplan") investment scheme, although the scheme ultimately did not get up and running.

The Government charged the conduct described above in the sixteen-count S21 Superseding Indictment (the "S21 Indictment").

Count One alleges that Danilovich conspired with Zemlyansky and others to conduct and participate in the conduct of the affairs of a RICO enterprise, the "Zemlyansky/Danilovich Organization," through a pattern of racketeering from approximately 2007 through 2012. The alleged pattern of racketeering by the Zemlyansky/Danilovich Organization includes the predicate offenses of securities fraud, mail fraud, wire fraud, money laundering, and the operation of illegal gambling businesses.

Counts Two through Six charge Danilovich with counts related to the Lyons Ward investment fraud scheme, specifically, conspiracy to commit securities fraud (Count Two); securities fraud (Count Three); conspiracy to commit mail and wire fraud (Count Four); mail fraud (Count Five); and wire fraud (Count Six).

Counts Seven and Eight charge Danilovich with counts related to the Baron & Caplan investment fraud scheme, specifically, conspiracy to commit securities fraud (Count Seven); and conspiracy to commit mail and wire fraud (Count Eight).

Counts Nine through Twelve charge Danilovich with counts related to the no-fault insurance scheme, specifically, conspiracy to commit health care fraud, mail fraud, and wire fraud (Count Nine); health care fraud (Count Ten); mail fraud (Count Eleven); and wire fraud (Count Twelve).

Counts Thirteen through Sixteen charge Danilovich with money laundering counts related to the no-fault insurance scheme, specifically, conspiracy to commit money laundering (Count Thirteen); promotional money laundering (Count Fourteen); concealment

money laundering (Count Fifteen); and an 18 U.S.C. § 1957 count of money laundering (Count Sixteen).

**B.     The Prior Motions *in Limine***

As the Court is aware, Danilovich and Zemlyansky were initially tried in the fall of 2013, and a retrial was scheduled for February 2015.  Prior to severing the re-trial, Judge Oetken ruled on the parties' motions *in limine*.  In doing so, Judge Oetken stated that any prior rulings from the first trial against Zemlyansky and Danilovich would "presumptively apply" at the retrial.  (Feb 9, 2015 Tr. 17).  At the July 29, 2015 pretrial conference, the Court again indicated that any prior rulings would presumptively apply to the Danilovich trial.  (July 29, 2015 Tr. 15 (stating that the Court was "not going to upset any of the rulings that have been made")).  For the Court's convenience, the prior rulings are summarized below.[1]

*First*, Judge Oetken granted the Government's motion to introduce evidence of predicate offenses within the period of the RICO conspiracy charged in the indictment, including the Rockford Group and Baron & Caplan investment fraud schemes, a fraudulent dental claim scheme that Danilovich and Zemlyansky operated in approximately 2011, various illegal poker games that operated between 2006 and 2012, and illegal sports betting businesses that operated in 2006 and 2007.  (Gov't Motion in Limine 5-13 (Docket Entry 1456) ("Gov't MIL"); Feb 9, 2015 Tr. 5).

*Second*, the Court granted the Government's motion to introduce acts of securites fraud that occurred *prior to* the period of the RICO conspiracy charged in the indictment.  These

---

[1]    Pursuant to Judge Oetken's scheduling order at the May 1, 2015 conference, which the Court has adopted, the Government writes to inform the Court that it will not have any expert witnesses.  (*See* May 1, 2015 Tr. 11 (The Court: ". . . Disclosure of any experts[, pursuant to Fed. R. Cr. P. 16(b)(1)(C),] will be due August 21[, 2015] as well, which is the [date of the] other pretrial filings.")).

frauds included Danilovich's involvement in a 2005 securities fraud, and Zemlansky's involvement in various boiler rooms from 1998 through 2005.  The Court reasoned that there were "valid Rule 404(b) purposes for the evidence, in particular . . . to show the existence of a relationship of mutual trust or to enable the jury to understand how the illegal relationship between co-conspirators developed, as in *United States* v. *Lin Guang*, 511 F.3d 110 [(2d Cir. 2007)], and . . . to establish knowledge, intent, and pattern with respect to the charged offenses." (Feb 9, 2015 Tr. 6; *see* Gov't MIL 14-26).

*Third*, the Court denied the Government's motion to introduce evidence of Danilovich's 2001 convictions for securities fraud and money laundering, reasoning that the convictions were not sufficiently similar to the charged crimes to qualify as modus operandi evidence under Rule 404(b).  Although Judge Oetken found the convictions were probative of knowledge and intent, Judge Oetken concluded that the probative value was substantially outweighed by the danger of unfair prejudice.  (Gov't MIL 26-32; Feb 9, 2015 Tr. 6-7).

*Fourth*, the Court granted the Government's motion to introduce evidence of the defendant's unexplained wealth, including the purchase and lease of luxury cars and watches, the use and receipt of large sums of cash, the defendant's failure to file personal tax returns, and related corporate tax returns.  (Gov't MIL 33-36; Feb 9, 2015 Tr. 6-7).

*Fifth*, the Court granted the Government's motion to preclude any reference to the outcomes of prior trials and determined that all references to prior trials should be to "prior proceedings" only in order to avoid the risk of a mistrial, which is not a true remedy for the Government.  (Gov't MIL 36-37; Feb 9, 2015 Tr. 7).

*Sixth*, the Court granted the Government's motion to preclude the defense from offering into evidence, or inquiring about, a 2012 Halloween costume of a prison inmate worn by a cooperating witness, pursuant to Federal Rules of Evidence 401, 403, and 608. (Gov't MIL 37-38; Feb 9, 2015 Tr. at 7). The Government did not call that individual as a witness at the Zemlyansky trial.

*Seventh*, the Court granted the Government's motion to preclude the defense from "blaming the victim" by suggesting that the insurance companies were negligent, lacked diligence, failed to detect, or (unknowingly) blessed the fraudulent scheme, or are otherwise an unworthy victim of a crime. The Court did, however, add that although the "negligence of a victim of a fraud as a legal matter is not relevant . . . general context and background is relevant and may be admissible" and therefore reserved decision "on specific objections as to when that line is crossed." (Gov't 38; Feb 9, 2015 Tr. 7-8).

*Finally*, the Court granted the Government's motion to preclude any suggestion by defense counsel that a U.S.S.G. § 5K1.1 letter *allows* the Court to impose a sentence below the applicable Guidelines range, as the Court may impose a below-Guidelines sentence in any event. (Gov't MIL 38-39; Feb 9, 2015 Tr. 8).

As for the defense motions, the Court denied as moot a motion *in limine* relating to the testimony of securities fraud victims about the impact on their lives, as the Government represented that it did not intend to present evidence of specific effects on victims' lives. (Feb 9, 2015 Tr. 8).

**Argument**

## THE COURT SHOULD PERMIT LIMITED TESTIMONY
## ABOUT DANILOVICH'S 2001 CONVICTION

**A.    Relevant Facts**

On March 14, 2001, Danilovich pleaded guilty in the Southern District of New York before the Honorable Loretta A. Preska, United States District Judge, to Counts Eight, Nine, Seventeen, and Twenty-Five of indictment 00 Cr. 247 (LAP) (the "Prior Indictment"). These counts charged Danilovich and others with: (i) conspiracy to commit securities fraud and mail fraud; (ii) securities fraud; (iii) conspiracy to commit money laundering; and (iv) money laundering. Danilovich was subsequently sentenced to 30 months' imprisonment, followed by three years' supervised release.

As noted above, the Government previously moved *in limine* to admit evidence of this prior boiler room-related conviction, including a transcript of Danilovich's guilty plea allocution (as the defendant's own statement), the judgment of conviction establishing the defendant's guilt, and possibly testimony from law enforcement officers relating, in part, to the defendant's participation in the conduct alleged in the Prior Indictment. Judge Oetken denied that motion, and the Government does not now move this Court to reconsider Judge Oetken's ruling in light of the Court's statement at the July 29, 2015 conference that it was "not going to upset any of the rulings that have been made."

However, the Government now moves for a limited exception to Judge Oetken's ruling — which was not previously raised to Judge Oetken — to allow for a cooperating witness (the "CW") to reference the fact that Danilovich had previously been convicted of a crime in order for the CW to provide complete and accurate testimony about relevant issues at this trial.

At the February 2015 trial of Zemlysanky, the CW testified that he laundered the proceeds of Danilovich and Zemlyansky's Lyons Ward scheme, Rockford Group scheme, and the no-fault insurance scheme, and that Danilovich was his primary point of contact. (Zemlyansky Trial Tr. 1352).  With respect to Lyons Ward and the Rockford Group, the CW generally testified that he gave wire instructions to Danilovich so that Danilovich could wire money from the Lyons Ward and Rockford Group bank accounts to various bank accounts in Latvia and elsewhere that belonged to shell companies controlled by the CW's associates; that once the money was wired to Latvia, it was often wired to other offshore accounts; that the money was ultimately wired back to bank accounts in the United States that the CW controlled; and that the CW ultimately delivered cash to Danilovich and, occasionally, to Zemlyansky in New York.  (*Id.* at 1282-1496).

At trial, the Government offered into evidence, and the CW testified about, a ledger that the CW maintained to keep track of his laundering of proceeds from the Rockford Group scheme for Danilovich and Zemlyansky.  (*Id.* at 1347-50; GX 17, 96, 97).  The CW said that he used the initials "M.Z." — *i.e.*, "Mikhail Zemlyansky" — in the ledger to indicate that money was being laundered for Zemlyansky and Danilovich. (Zemlyansky Trial Tr. 1350).  The CW explained that while Danilovich was his primary contact with respect to this money laundering, he used the initials "M.Z." instead of "M.D." because he knew that Danilovich had been convicted of securities fraud and therefore wanted to conceal his association with Danilovich.  (*Id.* at 1350-52).  An excerpt of the ledger, GX 17, is attached as Exhibit A hereto.

Prior to the CW's testimony at the February trial, the Government gave notice to the defense and the Court that it was mindful of the Court's ruling on admitting evidence of the

2001 conviction, and that its examination of the CW would simply draw out the prior conviction insofar as it explained why the CW "disguises Danilovich's role in [the] journal." (*Id.* at 1357-58).

> The CW thus testified as follows regarding Danilovich's prior conviction:
>
> Q. Who is MZ?
>
> A. That's how I marked myself Danilovich.
>
> Q. Did it also sometimes refer to Zemlyansky?
>
> A. All of the funds that were connected to Rockford, yes, it just that I never wrote Danilovich -- I never wrote his name in my notes.
>
> Q. So when it says MZ, it means either Danilovich or Zemlyansky?
>
> A. Yes.
>
> Q. And MZ is Michael Zemlyansky?
>
> A. Well, generally, yes. . . .
>
> Q. What does MZ stand for? What do the initials MZ stand for?
>
> A. That's the way I marked Danilovich in my book.
>
> Q. What did MZ refer to, whose name?
>
> A. Zemlyansky. It's just that's the way I connected them.
>
> Q. Why did you write MZ?
>
> A. I was trying to cover up -- I was trying to cover up my connection with Danilovich.
>
> Q. Why did you want to cover up –
>
> A. I never even called Danilovich from my phone number.
>
> Q. Why did -- why were you trying to do that?

8

>A. I was afraid. I knew that he had been in prison before and I knew that he had problems with the government, so I was afraid.
>
>Q. Do you know what he had been in prison before for?
>
>A. It was something connected to securities fraud.

(*Id.* at 1350-52).

>Similarly, on cross-examination, the CW testified:
>
>Q. Explain to the jury why you didn't use Michael Danilovich's initials, "MD, 10,000," instead of MZ.
>
>A. I was afraid to show anywhere any connection, any link, with Michael Danilovich, that I had any dealings with him, because these were illegal transactions. Michael Danilovich had already had a criminal conviction and had spent time for securities fraud in prison.
>
>Q. So you were trying to protect him.
>
>A. I was trying to protect myself, that I didn't have any connection with him.
>
>Q. You were trying to distance yourself from Michael Danilovich. He had been convicted. He had been in jail for securities fraud. You didn't want to be linked to him.
>
>A. Yes.

(*Id.* at 1518-19).

**B.  Discussion**

The Court should permit the Government to elicit limited testimony from the CW concerning Danilovich's prior conviction, as Judge Oetken permitted at Zemlyansky's retrial. Consistent with Judge Oetken's prior ruling, the Government does not seek to elicit details or specifics about the conviction. Rather, the core testimony that the Government would seek to elicit is that the CW used the "M.Z." code because he knew that Danilovich had a prior

9

conviction. Such testimony is necessary because it will allow the CW to explain to the jury why he used of code "M.Z." in his ledger to refer to Michael Danilovich. Absent such testimony, the jury would be confused and misled, the CW's testimony about the ledger would make no sense, and the CW's credibility would be unfairly undermined by the incomplete and stilted testimony. In other words, absent such testimony, the jury would be presented with a misleading version of the facts and, in particular, the relationship between the CW and Danilovich and Zemlyansky.

Under the Second Circuit's "inclusionary approach" to Rule 404(b) evidence, such limited testimony is appropriately admitted because it will "complete the story of the crimes" and avoid the inevitable (and avoidable) confusion that would follow if it were precluded. *United States* v. *Lasanta*, 978 F.2d 1300, 1307 (2d Cir. 1992), *abrogated on unrelated grounds*, *Florida* v. *White*, 526 U.S. 559 (1999); *see also United States* v. *Pitre*, 960 F.2d 1112, 1119 (2d Cir. 1992) (same); *United States* v. *Williams*, 205 F.3d 23, 33-34 (2d Cir. 2000) (same); *United States* v. *Watts*, 2011 WL 167627, at \*6-\*7 (S.D.N.Y. Jan. 11, 2011) (admitting evidence of tax fraud in RICO conspiracy case even though tax fraud was not a RICO predicate because it was "integral background information to the case on trial" and "necessary to accurately complete the story of the crime on trial") (citing *United States* v. *Townes*, 870 F.2d 880, 886 (2d Cir. 1989)).[2]

---

[2] *See also United States* v. *Faison*, 393 F. App'x 754, 759 (2d Cir. 2010) (evidence that co-conspirators were "roommates in prison" admissible to "explain[] the sequence of events leading to the conspiracy"); Dec. 4, 2009 Order, *United States* v. *Francisco Peralta*, No. 09 Cr 141 (PKC) (denying motion to exclude evidence that the defendant was incarcerated with a witness); *United States* v. *Moore*, 376 F.3d 570, 574 (6th Cir. 2004) (testimony in bank robbery trial establishing that a defendant met a co-conspirator while in prison admissible to prove a "prior relationship" that "was relevant in proving the [co-conspirators] had a common plan"); *United States* v. *Jackson*, 47 F. App'x 36, 38 (2d Cir. 2002) (in felon-in-possession case, upholding admission of wanted poster relating to uncharged shooting by defendant to "provid[e] the jury an explanation as to why the officers had initially approached him").

Such limited testimony concerning Danilovich's prior conviction is not unduly prejudicial so as to substantially outweigh the significant probative value, pursuant to Rule 403. Indeed, Danilovich must show that the prejudice "involves some adverse effect beyond tending to prove the fact or issue that justifies admission of the evidence." *Perry* v. *Ethan Allen, Inc.*, 115 F.3d 143, 151 (2d Cir. 1997); *see also United States* v. *Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990) (similar conduct evidence is not unfairly prejudicial where it is not "any more sensational or disturbing than the crimes" with which the defendant has been charged). Evidence is unfairly prejudicial "only when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence." *United States* v. *Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980). A "[d]efendant must show some undue prejudice, apart from the prejudice implicit in Rule 404(b) evidence." *United States* v. *Vargas*, 702 F. Supp. 70, 72-73 (S.D.N.Y. 1988). Furthermore, the "fact that evidence may be 'damning' does not render it inadmissible." *Id.* (citing *United States* v. *Cirillo*, 468 F.2d 1233, 1240 (2d Cir. 1972)). Finally, the Court can further guard against any potential undue prejudice by instructing the jury about the proper and improper uses of the "other crimes" evidence. Such an instruction serves as an appropriate "final protection" against possible prejudice, *see United States* v. *Levy*, 731 F.2d 997, 1002 (2d Cir. 1984), and juries are presumed to follow judicial instructions, *United States* v. *Salameh*, 152 F.3d 88, 116 (2d Cir. 1998).

Accordingly, limited testimony about Danilovich's 2001 conviction should be admitted at trial.

**CONCLUSION**

For the reasons stated above, the Government respectfully requests that the Court grant its motion *in limine*.

Dated:     New York, New York
           August 21, 2015

                                        Respectfully submitted,

                                        PREET BHARARA
                                        United States Attorney
                                        Southern District of New York


                                 By:    _____/s/_____
                                        Daniel S. Noble
                                        Joshua A. Naftalis
                                        Jaimie L. Nawaday
                                        Assistant United States Attorneys
                                        Southern District of New York
                                        (212) 637-2239 / 2310 / 2275