UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

―――――――――――――――――――――――――――――

MICHAEL DANILOVICH,
                          Petitioner,

           -v-

UNITED STATES OF AMERICA,
                          Respondent.

20-CV-296 (JPO)

12-CR-171 (JPO)

OPINION AND ORDER

―――――――――――――――――――――――――――――

J. PAUL OETKEN, District Judge:

      Petitioner Michael Danilovich was convicted following a five-week jury trial of a RICO conspiracy, two counts of conspiracy to commit securities fraud, securities fraud, two counts of conspiracy to commit mail fraud and wire fraud, two counts of mail fraud, two counts of wire fraud, conspiracy to commit health care fraud, mail fraud, and wire fraud, health care fraud, conspiracy to commit money laundering, and three counts of money laundering.  (Dkt. No. 16 at 5; *see also United States v. Danilovich*, No. 12 Crim. 171, Dkt. No. 1669.)  Before this Court is Danilovich's 28 U.S.C. § 2255 petition, in which he alleges numerous claims of ineffective assistance of counsel.

**I.**     **Background**

      The Court assumes familiarity with the factual background in this case.  However, a brief overview of the procedural history is provided below.

      In February 2012, Danilovich and others were charged for their roles in a scheme to defraud insurance companies under New York's No-Fault Insurance Law.  A grand jury returned a superseding indictment in May 2013, charging Danilovich and others with nine additional counts of racketeering.  (*See* Dkt. No. 16 at 1–2.)  Following a two-month trial, the jury failed to reach a verdict on the counts as to Danilovich.  In 2015, following an additional superseding

1

indictment that added counts related to an $80 million securities fraud scheme, Danilovich was retried with new counsel.[1] Following a five-week trial before the late Judge Deborah A. Batts, he was convicted on all counts and sentenced to a 300-month term of imprisonment. (Dkt. No. 16 at 18.)

Danilovich filed a *pro se* letter in the middle of trial alleging ineffective assistance of counsel and requesting a mistrial (Dkt. No. 16-2), which Judge Batts denied by order (Dkt. No. 16-3). Danilovich appealed the judgment of conviction and raised a number of claims. The Second Circuit rejected his claims and affirmed the judgment of conviction. *United States v. Danilovich*, 731 F. App'x 45 (2d Cir. 2018).

Danilovich then filed a petition for relief pursuant to 28 U.S.C. § 2255 and subsequently submitted an attorney-client privilege waiver. (*See* Dkt. Nos. 1, 14.) The government responded to the petition in September 2020 (Dkt. No. 16) and Danilovich filed a reply in November 2020 (Dkt. No. 21).

## II.     Legal Standard

Under 28 U.S.C. § 2255, an individual convicted of federal crimes may petition a court to vacate, set aside, or correct his sentence. "[C]ollateral attack on a final judgment in a criminal case is generally available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (internal quotation marks omitted). "Because collateral challenges are in tension

---

[1] Following a *Curcio* hearing regarding a potential conflict with his counsel in the first trial, Eric Creizman, Danilovich indicated that he did not wish to waive his right to conflict-free counsel. (*See* Dkt. No. 16-1 at 2:19–21; 4:21–5:23.) Judge Batts then terminated Creizman and appointed Lorraine Gauli-Rufo as replacement CJA counsel. (*See United States v. Danilovich*, No. 12 Crim. 171, Dkt. No. 1622.)

with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010).  Where a petitioner is *pro se*, as is the case here, the petition is held to "less stringent standards than [those] drafted by lawyers," and a court must construe the petitioner's submissions "liberally and interpret them to raise the strongest arguments that they suggest." *Santiago v. United States*, 187 F. Supp. 3d 387, 388 (S.D.N.Y. 2016) (internal quotation marks omitted).  However, *pro se* litigants are "not exempt from compliance with the relevant rules of procedural and substantive law." *Carrasco v. United States*, 190 F. Supp. 3d 351, 352 (S.D.N.Y. 2016) (internal quotation marks omitted).

In ruling on a § 2255 petition, district courts are required to hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the [incarcerated individual] is entitled to no relief." 22 U.S.C. § 2255(b).  A hearing is also not necessary "where the allegations are vague, conclusory, or palpably incredible." *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013) (internal quotation marks omitted); *see also Rosa v. United States*, 170 F. Supp. 2d 388, 398 (S.D.N.Y. 2001) (no hearing necessary "where (1) the allegations of the motion, accepted as true, would not entitle the petitioner to relief or (2) the documentary record, including any supplementary submissions such as affidavits, render a testimonial hearing unnecessary.")  Therefore, to obtain a hearing under § 2255, "the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle him to relief." *Gonzalez*, 722 F.3d at 131.

A petitioner asserting ineffective assistance in a § 2255 petition must establish that (1) his "counsel's performance was deficient" and (2) "the deficient performance prejudiced the

3

defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). As for the first prong, a court "must judge [counsel's] conduct on the basis of the facts of the particular case, viewed at the time of counsel's conduct, and may not use hindsight to second-guess his strategy choices." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (internal quotation marks omitted). There is a strong presumption that counsel's conduct is within the range of reasonable professional assistance. *See Strickland*, 466 U.S. at 689. As for the second prong, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

### III.    Discussion

Danilovich raises several claims of ineffective assistance of counsel during both the pre-trial and trial phases. Each claim is addressed below.

#### A.    Failure to Conduct Adequate Pretrial Investigation

Danilovich argues that his defense counsel in the second trial, Thomas Ambrosio and Lorraine Gauli-Rufo, generally failed to conduct an adequate pre-trial investigation. (Dkt. No. 1 at 11 ¶ 4.) He provides little information about what he expected his counsel to do and what they did not do with respect to pre-trial investigation. Along with its opposition brief, the government submitted an affidavit from Ambrosio refuting these claims. Ambrosio contends that his billing statement for this case showed that he spent 547 hours of out-of-court time preparing for Danilovich's trial and that Gauli-Rufo spent 602 hours. (Dkt. No. 16-4 at 2 ¶ 9.)

Ambrosio's affidavit is sufficient to counter Danilovich's allegation that his counsel did not conduct a pre-trial investigation. Indeed, Ambrosio and Gauli-Rufo spent over one thousand hours preparing for the trial. Furthermore, the Judge Batts, who presided over the second trial, denied Danilovich's claim of ineffective assistance of counsel, in which he alleged that his counsel was generally unprepared for trial. (*See* Dkt. No. 16-3 at 3.) Judge Batts concluded that

4

both Ambrosio and Gauli-Rufo had provided competent counsel at least up to the point of the mid-trial petition. (*Id.*) As the presiding judge over the second trial, Judge Batts' conclusion that Ambrosio and Gauli-Rufo had adequately prepared for trial is entitled to great weight. Finally, this Court noted during a pre-trial conference in which Gauli-Rufo requested four months to adequately prepare that the second trial was "an unusual case in which you have four trials – you've heard every witness repeatedly . . . . I don't think you need four months. I think very rarely do lawyers focus on these cases for more than the few weeks before trial and in this case you really do have a road map of every single witness and a wide range of cross-examination by many counsel." (*United States v. Danilovich*, No. 12 Crim. 171, Dkt. No. 1641 at 6:12–18.) As explained below, defense counsel reviewed all the transcripts of the previous trials in preparing for Danilovich's second trial. This claim thus fails.

        **B.**        **Failure to Review First Trial Documents**

Danilovich argues that Ambrosio and Gauli-Rufo failed to review the transcripts, motions, and 3500 material from the first trial. (Dkt. No. 1 at 4.) Again, Ambrosio's affidavit directly contradicts this assertion, as he contends that he and Gauli-Rufo "spent an extensive amount of time reviewing and discussing between ourselves and with Danilovich the testimony, evidence and motions from his first trial." (Dkt. No. 16-4 at 3 ¶ 19.) Furthermore, during a conference well before the second trial, Ambrosio told Judge Batts that he and Gauli-Rufo "have been going through two trials worth of transcripts to try to move this case along because there was some pressure for us to try this case quickly. And we needed some time because while Judge Oetken had said you basically have to read the transcripts, and I agree with that." (*United States v. Danilovich*, No. 12 Crim. 171, Dkt. No. 1674 at 12:9–12.) He further explained that he and Gauli-Rufo "have been diligently reading transcripts, going over thousands and thousands of

pages of documents." (*United States v. Danilovich*, No. 12 Crim. 171, Dkt. No. 1674 at 12:17–19.)

Ambrosio's affidavit, as well as his statements to the trial court months before the second trial, undercut Danilovich's claim that his second trial counsel did not review the materials from the first trial. This claim is therefore denied. *See Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001) (affirming a district court's decision to deny habeas petition without a hearing where counsel submitted a detailed affidavit contradicting petitioner's statements).

### C.  Failure to Interview and Call Witnesses

Danilovich argues that trial counsel "failed to interview a single witness, including potential defense witnesses and known prosecution witnesses." (Dkt. No. 1 at 5.) He claims that he made his counsel aware of several potential witnesses, some of whom had testified at his first trial or in the Zemlyansky retrial, and counsel said that there was no reason to call defense witnesses because the government's case was weak. (Dkt. No. 1 at 11 ¶¶ 5–7.) Ambrosio refutes these claims, arguing that "no defense witness could have testified to personal knowledge that Danilovich was innocent," and "no such witness was produced by Danilovich in his first trial nor identified to Ms. Gauli-Rufo and [me] in the second trial." (Dkt. No. 16-4 at 2 ¶ 13.) Ambrosio also denies ever making any statement that the government's case was weak. (Dkt. No. 16-4 at 2 ¶ 11.)

Danilovich offers no evidence that his first trial counsel called any witnesses for the defense. Based on the Court's own recollection and a review of the transcripts from the first trial, only Defendants Joseph Vitoulis and Billy Geris presented witnesses in a defense case. Creizman entered a stipulation that Danilovich is a United States citizen but did not call any witnesses or admit any other evidence in the case. (*United States v. Danilovich*, No. 12 Crim. 171, Dkt. No. 924 at 4185:20–4186:1.) Because Danilovich's claim that Ambrosio and Gauli-

6

Rufo did not interview or call defense witnesses is both vague, unsupported by competent evidence, and contradicted by Ambrosio's affidavit and the trial transcripts, this claim fails. *See Gonzalez*, 722 F.3d at 131.

### D. Failure to Meet with Prior Counsel

Danilovich alleges that defense counsel in the second trial failed to meet with his first trial counsel, Eric Creizman. (Dkt. No. 1 at 5; 11 ¶ 8.) He claims that because of their failure to meet with Creizman, Gauli-Rufo and Ambrosio "were not up to speed on what went right and what went wrong at the first trial." (Dkt. No. 1 at 5.) Ambrosio refutes this, claiming that he and Gauli-Rufo met with Creizman and his associate at his office on many occasions prior to and during the trial. (Dkt. No. 16-4 at 3 ¶¶ 15–16.) He also explains that he personally spoke with Creizman "the night before I gave closing arguments in order to help refine my closing arguments." (*Id.*)

Given Ambrosio's statements that he and Gauli-Rufo met with Creizman several times, and Danilovich provides no evidence, such as an affidavit from Creizman, supporting his allegations, this claim fails. *See Chang*, 250 F.3d 79 at 86.

### E. Stipulations

Danilovich argues that his trial counsel did not review the government's evidence before they agreed to broad stipulations, including a stipulation admitting Danilovich's cell phone data and a stipulation about venue. (Dkt. No. 1 at 6, 12 ¶ 10.) Ambrosio argues that he and Gauli-Rufo only stipulated to the authenticity of the data, not to its admission. (Dkt. No. 16-4 at 3 ¶ 21.) Ambrosio does not address the allegation about venue.

Even assuming that trial counsel had not consulted with Danilovich about their decision to stipulate to the data's authenticity and to venue, this would not be a sufficient basis for concluding that counsel had been ineffective at trial. "[T]rial decisions to offer or stipulate to

7

certain evidence . . . are primarily matters of trial strategy and tactics . . . and thus are virtually unchallengeable absent exceptional grounds for doing so." *United States v. Cohen*, 427 F.3d 164, 170 (2d Cir. 2005); *see also Williams v. United States*, No. 06 Civ. 319, 2014 WL 1911432, at *8 (S.D.N.Y. May 13, 2014) ("[G]iven the high degree of deference afforded to reasoned decisions concerning defense strategy, courts generally decline to second-guess an attorney's choice to stipulate."). There are no exceptional grounds for questioning trial counsel's decision to stipulate to the data's authenticity and to venue — routine stipulations in criminal trials — and it therefore fell within the "wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

### F. Failure to Make Pre-Trial Motions

Danilovich contends that his trial counsel was ineffective by failing to file a pretrial motion to suppress his cell phone data and a motion to suppress post-arrest statements he made to law enforcements. (Dkt. No. 1 at 12 ¶¶ 10, 12.) Ambrosio states that "[a]ll pretrial motions had been filed prior to Ms. Gauli-Rufo and I coming into the case, and we were bound by the Court's rulings on those motions." (Dkt. No. 16-4 at 3 ¶ 21.) Creizman had not made a motion to suppress the data and the motion to suppress the post-arrest statements was denied. (Dkt. No. 16-4 at 3 ¶¶ 21–23; *see also United States v. Danilovich*, No. 12 Crim. 171, Dkt. Nos. 749, 794.) And before this case was reassigned to Judge Batts for trial, this Court had set a briefing schedule for any motions *in limine*, proposed jury instructions, and proposed *voir dire* questions. (*United States v. Danilovich*, No. 12 Crim. 171, Dkt. No. 1641 at 7:20–8:9.) Danilovich's counsel at the first trial had the opportunity to submit pre-trial motions, which he did, and there was no opportunity for Danilovich's counsel at the second trial to re-submit pre-trial motions requesting suppression of the cellular data or the post-arrest statements.

8

Thus, trial counsel's failure to file any pretrial motions is not a sufficient basis for an ineffective assistance of counsel claim.

### G. Outcome Different with First Trial Counsel

Danilovich contends that "[w]ith competent counsel, as he had in his first trial with Mr. Creizman, there is more than a reasonable probability that Mr. Danilovich would not have been convicted at the second trial." (Dkt. No. 1 at 6.)

But, as the government points out, Danilovich waived his right to have Creizman represent him at trial. During a *Curcio* hearing, Creizman indicated that his client, Danilovich, did "not want to waive at all his right to conflict free counsel." (Dkt. No. 16-1 at 1.) Danilovich confirmed on the record that he understood that with this decision, Creizman could no longer represent him now or ever again. (Dkt. No. 16-1 at 2.) This is also a vague speculation and is not a basis for an ineffective assistance claim. *See Gonzalez*, 722 F.3d at 131.

### H. Failure to Cross-Examine Witnesses

Danilovich alleges that Gauli-Rufo and Ambrosio's "abilities on cross-examination of prosecution witnesses was sorely lacking, and it was clear that counsel was not skilled or prepared to undertake a trial of this magnitude. Counsel was called down by the Court at numerous sidebars and chastised for their inept performance." (Dkt. No. 1 at 6.)

Though the Court does not consider Danilovich's mid-trial petition to be his first § 2255 petition, it nonetheless relies on Judge Batts' opinion denying these same allegations. Judge Batts explained that the sidebar comments "were attempts by the Court to move this trial along efficiently and fairly. They do not reflect in any way the Court's view of the competence of Defense Counsel. However, having observed Defense Counsel's performance during trial thus far, Defense Counsel's performance does not fall outside of the range of professionally competent assistance." (Dkt. No. 16-4 at 3.) Furthermore, Judge Batts explained that "[w]hile

9

Defendant may disagree with the techniques employed by Defense Counsel during cross-examination and the Government's examination of witnesses, Defendant cannot overcome the presumption that Defense Counsel's performance is sound trial strategy." (*Id.*). The Second Circuit also concluded that "[t]he district court reasonably concluded that Danilovich's arguments as to his counsel's deficient performance and disagreement on trial strategy were unavailing." *Danilovich*, 731 F. App'x at 50.

The Court concludes that based on Danilovich's conclusory allegations about his counsel's cross-examination techniques, the determination by Judge Batts, who presided over the second trial, that their conduct did not fall outside the range of competent counsel, and by the Second Circuit, and the high bar set for establishing an ineffective assistance of counsel claim based on strategic decisions made by trial counsel, this claim fails. *See, e.g.*, *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987) ("Decisions whether to engage in cross-examination, and if so to what extent and in what manner, are . . . strategic in nature" and do not support an ineffective assistance claim); *United States v. Hsu*, 669 F.3d 112, 123 (2d Cir. 2012) (expression of dissatisfaction with counsel's trial performance is not a "substantial complaint").

I.  **Failure to Notify Court About Breakdown in Attorney-Client Communications**

Danilovich next alleges that Ambrosio and Gauli-Rufo "failed to notify the Court when serious differences arose between them and the defendant during trial, and those differences had caused a complete breakdown in attorney/client privilege." (Dkt. No. 1 at 6.) He claims that defense counsel refused to make a substitution of counsel request. (*Id.*)

This claim is contradicted by the record. Judge Batts explained that she received Danilovich's mid-trial petition complaining of ineffective assistance of counsel, challenging counsel's level of preparation, and seeking substitution of counsel and a mistrial. (Dkt. No. 16-3

10

at 1.) Judge Batts noted that the petition was sent to the court by defense counsel and counsel had declined to respond to the letter but reiterated that they would continue to work zealously to defend Danilovich. (*Id.*) Ambrosio's recollection of events tracks Judge Batts' recounting: he states that "Danilovich provided me with a pro-se motion to declare a mistrial based upon ineffective assistance of trial counsel. I filed the motion with the Court on behalf of Danilovich." (Dkt. No. 16-4 ¶ 27.) He assured Danilovich that he "took no personal offense to the disparaging allegations he made . . . and that I would continue to zealously represent him." (Dkt. No. 16-4 ¶ 28.) Thus, this claim fails.

### J.      Failure to Request Jury Instructions

Finally, Danilovich claims that counsel failed to request a jury instruction given by this Court during the first trial regarding the factors to be considered to determine ownership of the professional corporations located on Danilovich's property. (Dkt. No. 1 at 7.) He also alleges that counsel failed to object to the Court's omission of their requested jury charge about the use of "runners" and "kickbacks." (*Id.*)

Danilovich raised the same issues on appeal. *See Danilovich*, 731 F. App'x at 48 ("Danilovich argues that the district court erred because it did not instruct the jury (1) on the meaning of "ownership" . . . and (2) that the use of 'runners' and the payment of kickbacks are not inherently illegal."). The Second Circuit concluded that Danilovich waived any objection to the jury instruction on 'ownership' because his counsel requested the instruction the Court ultimately used, and that the district court did not plainly err in the instructions it gave. *See id.* Moreover, Danilovich's defense counsel reasonably concluded that their proposed instruction was more favorable to the defense than the "ownership" instruction given in the first trial.

"It is well-established that a § 2255 petition cannot be used to relitigate [issues] which were raised and considered on direct appeal." *United States v. Sanin*, 252 F.3d 79, 89 (2d Cir.

2001) (internal quotation marks omitted).  Because the Second Circuit has already considered Danilovich's jury instruction claims and held that the jury instructions were not improper, this claim fails.

## IV. Conclusion

For the foregoing reasons, Danilovich's petition for a writ of habeas corpus under 28 U.S.C. § 2255 is denied.  Because the Court finds that Danilovich's claims may be fully evaluated without counsel, his motion for appointment of counsel is denied.

The Clerk of Court is directed to close the motion at Docket Number 2 and to close this matter.  The Clerk is also directed to mail a copy of this opinion and order to the Petitioner.

SO ORDERED.

Dated: September 14, 2022
New York, New York

_____
J. PAUL OETKEN
United States District Judge