UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

―――――――――――――――――――――――――――――
UNITED STATES OF AMERICA

-v-

MICHAEL DANILOVICH,

Defendant.
―――――――――――――――――――――――――――――

12-CR-171-02 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Defendant Michael Danilovich is serving a 25-year sentence of imprisonment, imposed in July 2016, for fraud and racketeering offenses. He is currently incarcerated at the Federal Correctional Institution at Otisville, New York. Danilovich has moved for a sentence reduction under the First Step Act, 18 U.S.C. § 3582(c)(1)(A), on the basis of his medical conditions and his rehabilitation. The Government has opposed Danilovich's motion. (*See* ECF Nos. 2200 – 2204.)

For the reasons that follow, Defendant's motion for a sentence reduction is granted and his sentence will be reduced to 15 years' imprisonment to be followed by three years of supervised release.

**I.     Background**

In February 2012, Danilovich and 35 other individuals were charged for their roles in a scheme to defraud automobile insurance companies under New York's no-fault insurance law. (ECF No. 1.) A grand jury returned a superseding indictment in May 2013, charging Danilovich and others with additional counts of racketeering. (ECF No. 600.) Following a two-month trial, the jury failed to reach a verdict on the counts as to Danilovich. In 2015, following an additional superseding indictment that added charges, including charges related to an $80 million securities

fraud scheme, Danilovich was retried before Judge Deborah Batts and convicted on all counts. Judge Batts sentenced him to a 25-year (300-month) term of imprisonment. (ECF No. 2033.)

Danilovich challenged his conviction and sentence on direct appeal. The Second Circuit rejected his challenges and affirmed his conviction and sentence. *United States v. Danilovich*, 731 F. App'x 45 (2d Cir. 2018). Danilovich later challenged his conviction under 28 U.S.C. § 2255 on the basis of alleged ineffective assistance of counsel. This Court denied his § 2255 petition. (ECF No. 2197.)

On May 1, 2020, Danilovich filed his first motion for a sentence reduction under the First Step Act, seeking an order releasing him to home confinement in light of the COVID-19 pandemic. (ECF Nos. 2160 – 62.) Following oral argument, this Court denied that motion, concluding that "release to home confinement now — just four years into a 25-year sentence — [was not] justified based on consideration of the factors set forth in 18 U.S.C. § 3553(a)." (ECF No. 2180 at 3.) Noting the seriousness of Danilovich's criminal conduct, the Court stated that "the statutory purposes of specific deterrence and protecting the public from further crime, in addition to just punishment, respect for the law, and general deterrence, require Defendant to serve a substantial part of the sentence imposed by Judge Batts." (*Id.*)

## II.     Legal Principles

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." *United States v. Gotti*, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020). As amended by the First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194, the "compassionate release" statute empowers sentencing courts to exercise their discretion in deciding motions for reduction of a previously imposed sentence. Specifically, the First Step Act provides that a district court "may reduce [a defendant's] term of imprisonment . . . after considering the factors

set forth in [18 U.S.C.] section 3553(a) . . . if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

As the Second Circuit explained in *United States v. Brooker*, the First Step Act brought about "monumental" change, allowing for the "release of thousands of imprisoned people whom Congress and the Executive believed did not need to be incarcerated." 976 F.3d 228, 230 (2d Cir. 2020). But the change was also "incremental"; "rather than mandating more lenient outcomes, [the statute] favor[s] giving discretion to an appropriate decisionmaker to consider leniency." *Id.* Thus, "the First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." *Id.* at 237. The court further explained:

> It bears remembering that compassionate release is a misnomer. 18 U.S.C. § 3582(c)(1)(A) in fact speaks of sentence reductions. A district court could, for instance, reduce but not eliminate a defendant's prison sentence, or end the term of imprisonment but impose a significant term of probation or supervised release in its place. Beyond this, a district court's discretion in this area — as in all sentencing matters — is broad. The only statutory limit on what a court may consider to be extraordinary and compelling is that "[r]ehabilitation . . . *alone* shall not be considered an extraordinary and compelling reason."

*Id.* at 237-38 (citations omitted; quoting 28 U.S.C. § 994(t) (emphasis added)).

To be eligible for release under 18 U.S.C. § 3582(c)(1)(A), a defendant must make three showings. "First, absent waiver or forfeiture by the government, an inmate must exhaust administrative remedies by requesting such relief from prison authorities." *United States v. Keitt*, 21 F.4th 67, 71 (2d Cir. 2020) (per curiam). Second, the court must "consider[] the factors set forth in 18 U.S.C. § 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Jones*, 17 F.4th 371, 374-75 (2d Cir. 2020) (per curiam). Finally, "the inmate must demonstrate that his proffered circumstances are indeed

3

'extraordinary and compelling' such that, in light of the[] § 3553(a) factors, a sentence reduction is justified." *Keitt*, 21 F.4th at 71.

### III. Discussion

As a threshold matter, it is undisputed that Danilovich has exhausted his administrative remedies. (*See* ECF No. 2201-6.)

#### A. Extraordinary and Compelling Reasons

Exercising the discretion granted under *Brooker*, the Court finds that Danilovich has established extraordinary and compelling reasons for a sentence reduction.

First, Danilovich's medical condition has significantly deteriorated during his incarceration and poses serious risks to his health. He is now 50 years old, and he has a long history of struggling with obesity. In January 2016 he weighed 280 pounds. His weight has now reached 375 pounds, and he has been diagnosed with type II diabetes. Since December 2017, he has been inquiring with BOP medical staff about bariatric gastric bypass surgery, but BOP has not been able to offer that option. Prior to the pandemic, Danilovich consulted with a dietician and made efforts to comply with a nutrition and exercise plan. The arrival of the pandemic in March 2020, however, led to lockdowns of the facility and made it nearly impossible to comply with the exercise regimen. Danilovich also suffers from hypertension. His worsened obesity, combined with his type II diabetes and hypertension, place him at significantly greater risk of serious health problems or death, including from COVID-19 and other possible infections. This Court and other courts have found that these and similar medical conditions can constitute extraordinary and compelling reasons for a sentence reduction. *See, e.g.*, *United States v. Rodriguez*, No. 05-CR-960, 2022 WL 158685, at *3 (S.D.N.Y. Jan. 18, 2022); *United States v.*

*Rodriguez*, 492 F. Supp. 3d 306, 310–11 (S.D.N.Y. 2020); *United States v. Anderson*, No. 16-CR-824, 2020 WL 2849483, at *2 (S.D.N.Y. June 2, 2020).

Second, the conditions of confinement as a result of the pandemic have made Danilovich's incarceration harsher —and effectively more punitive — than could have been anticipated by the sentencing court. It is true that conditions in detention facilities have improved since the first two years following March 2020. It remains the case, however, that Danilovich underwent long periods of lockdown conditions, with strictly limited opportunities for exercise and visitation with his wife and young children. These conditions were particularly difficult given Danilovich's medical conditions. "For someone with [the defendant's] health profile, the risk of suffering severe health consequences if he contracts COVID-19, coupled to the severe conditions imposed by the concomitant lockdowns and restrictions that are necessary to ensure [his] safety, means that 'the actual severity of [his] sentence as a result of the COVID-19 outbreak exceeds what the [sentencing] [c]ourt anticipated.'" *Rodriguez*, 492 F. Supp. 3d at 311 (quoting *United States v. Mel*, No. TDC-18-0571, 2020 WL 2041674, at *3 (D. Md. Apr. 28, 2020)). The pandemic "render[ed] the conditions of confinement far harsher and more punitive than the Court had anticipated." *United States v. Banks*, No. 99-CR-1048-1, 2022 WL 16549304, at *6 (S.D.N.Y. Oct. 31, 2022) (Chin, J.) (citation omitted). "Like many others, [the defendant] has experienced repeated lockdowns, extended periods without visitation from family and legal counsel, and severely restricted movement." *United States v. Snype*, No. 02-CR-939, 2023 WL 4622870, at *9 (S.D.N.Y. July 19, 2023) (Chin, J.). The conditions of confinement therefore weigh in favor of finding extraordinary and compelling reasons for a sentence reduction.

5

Finally, the evidence of Danilovich's rehabilitation, combined with the other considerations, supports a finding of extraordinary and compelling reasons for a sentence reduction.

That evidence includes letters from fellow inmates, family, friends, and BOP correctional staff. Danilovich has completed 63 courses while in prison. He has had no disciplinary infractions. He has become a GED instructor and has provided hundreds of hours of support to fellow inmates. Among the most persuasive pieces of evidence are the letters from BOP corrections officers. One such letter discusses the change in Danilovich over time: "[H]e has gone from being a selfish inmate with the mentality of 'everyone is out to get me and I need to take care of myself only,' to helping other inmates, taking classes, and working with staff." (ECF No. 2201-2 at 2.) The officer believes that Danilovich "is ready to reintegrate into society." (*Id.*) Another officer noted: "It is not very often that you see such change take place and I am thrilled to see the progress this inmate has made." (ECF No. 2201-5 at 5.) Danilovich's rehabilitation is also supported by his continued close relationship with his family. *See Snype*, 2023 WL 4622870, at *9.

Of course, it is impossible to know with mathematical certainty whether someone is genuinely and fully rehabilitated. And it would be naïve not to apply a degree of skepticism where, as here, a defendant engaged in criminal conduct after a prior conviction for similar conduct. However, "no man is beyond redemption." *Lawson v. U.S. Citizenship & Immigr. Servs.*, 795 F. Supp. 2d 283, 298 (S.D.N.Y. 2011) (citation and internal marks omitted). And it is rare to see a showing of rehabilitation as strong as Danilovich has made. The letters from BOP staff as well as from Danilovich, family members, and friends, coupled with his actual

6

conduct while incarcerated, all "paint the same picture: a man dedicated to atoning for his crimes to society by empowering others to be better than he was." (ECF No. 2204 at 3.)

The Court concludes that this substantial evidence of rehabilitation and growth, along with Danilovich's medical conditions and the harsh nature of incarceration during COVID, constitute extraordinary and compelling reasons to reduce Danilovich's sentence. *See Snype*, 2023 WL 4622870, at *9 – 10; *Rodriguez*, 2022 WL 158685, at *4 – 5.

### B. Section 3553(a) Sentencing Factors

The Court must next weigh the sentencing factors listed in 18 U.S.C. § 3553(a). These include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the rule of law, to provide just punishment, to adequately deter criminal conduct, to provide the defendant with needed educational or vocational training or treatment, and to protect the public; (3) the kinds of sentences available; (4) the Sentencing Guidelines; and (5) the need to avoid sentencing disparities between similarly situated defendants.

The Court has carefully considered all of the Section 3553(a) factors. While bearing in mind that "rehabilitation alone" is not sufficient to warrant a sentence reduction, the Court concludes that the 25-year sentence imposed on Danilovich is greater than necessary to comply with the purposes of sentencing and that a reduction to 15 years is warranted.

With regard to the first factor, "evidence of postsentencing rehabilitation may be highly relevant." *Pepper v. United States*, 562 U.S. 476, 491 (2011). As discussed above, Danilovich has made substantial efforts at rehabilitation. His impressive education and vocational record, lack of disciplinary infractions, and glowing letters weigh in favor of a sentence reduction.

7

The second factor requires that the sentence "reflect the seriousness of the offense," "promote respect for the law," and "provide just punishment for the offense," see 18 U.S.C. § 3553(a)(2)(A). This Court previously noted that these considerations "require Defendant to serve a substantial part of the sentence imposed by Judge Batts." (ECF No. 2180 at 3.) As this Court has recognized, and as Danilovich himself acknowledges, the criminal conduct here was extremely serious. But a 15-year term of imprisonment is a very lengthy term. It is serious punishment, particularly for a nonviolent offense and particularly in light of the considerations discussed above, including the conditions of confinement. Moreover, Section 3553(a) also directs the Court to consider whether the sentence "protect[s] the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(C). The evidence of Danilovich's rehabilitation is relevant to this factor and counsels in favor of a sentence reduction.

Section 3553(a) also requires that the sentence provide the defendant with needed "medical care" and "educational or vocational training" "in the most effective manner." 18 U.S.C. § 3553(a)(2)(D). As discussed above, Danilovich has been unable to obtain certain medical care while incarcerated, and his earlier release is likely to remedy that. He has also taken advantage of every opportunity for educational training provided in prison. His "substantial experience in prison industry, along with [his] promising support network and reentry plan, suggest that incarceration no longer serves to provide [the defendant] with needed educational and vocational training." *United States v. Quinones*, No. 00-CR-761, 2021 WL 797835, at *4 (S.D.N.Y. Feb. 27, 2021).

The Sentencing Guidelines called for a sentence of 320 years' imprisonment for Danilovich. (ECF No. 2051 at 38.) As everyone recognized at sentencing — including Judge Batts, the Government, and the Probation Department — that advisory Guidelines sentence,

which was largely driven by the calculation of loss amount, was clearly greater than necessary to serve the purposes of sentencing.  The Probation Department recommended a sentence of 25 years' imprisonment, less than one tenth of the Guidelines sentence, and that is the sentence imposed by Judge Batts.  (ECF No. 1932 at 58.)  This is not a case in which the Sentencing Guidelines meaningfully contribute to a determination of precisely how long a prison sentence is "sufficient, but not greater than necessary, to comply with the purposes" set forth in the sentencing statute.  18 U.S.C. § 3553(a).

Finally, the Court addresses "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a)(6).  Danilovich's 25-year sentence was much longer than any other sentence imposed on the 44 defendants in this case.  Danilovich was one of the leaders of the criminal conduct, together with Zemlyansky, who is the most comparable co-defendant.  Zemlyansky was sentenced to 15 years' imprisonment based on a similarly lengthy loss-driven Guidelines calculation (105 years).  It is worth noting that the Probation Department recommended the same sentence for both Danilovich and Zemlyansky:  25 years.  At Danilovich's sentencing, the Government argued that Danilovich deserved a harsher sentence than Zemlyansky's 15-year sentence because, among other things, Danilovich had a prior conviction and was convicted of more counts than Zemlyansky.  (ECF No. 2051 at 28.)  These are legitimate grounds for a sentencing differential, as the sentencing judge determined.  This Court does not believe, however, that these considerations warrant an additional ten years of imprisonment, in light of the fact that Zemlyanksy and Danilovich were essentially partners in virtually all aspects of the criminal conduct involved in this case.  But in any event, the Court concludes that these aggravating factors specific to Danilovich are counterbalanced by Danilovich's medical

condition and rehabilitation, as discussed above. When those factors are added to the analysis, a sentence commensurate with Zemlyansky's sentence is entirely appropriate under Section 3553(a).

After carefully considering these factors, the Court concludes that a sentence of 15 years' imprisonment, to be followed by three years of supervised release, is sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in Section 3553(a).

### IV. Conclusion

For the foregoing reasons, Danilovich's motion for a sentence reduction (ECF No. 2200) is granted. Pursuant to 18 U.S.C. § 3582(c)(1)(A), Danilovich's previously imposed sentence of 25 years' (300 months') imprisonment is hereby reduced to a term of 15 years' (180 months') imprisonment, followed by three years of supervised release on the terms and conditions previously specified.

SO ORDERED.

Dated: August 7, 2023
       New York, New York

_____
J. PAUL OETKEN
United States District Judge